Jeffery J. Carlson (State Bar No. 60752)
Carlsonj@cmtlaw.com
J. Grace Felipe (State Bar No. 190893)
Felipeg@cmtlaw.com
CARLSON & MESSER LLP
5959 W. Century Boulevard, Suite 1214
Los Angeles, California 90045
(310) 242-2200 Telephone
(310) 242-2222 Facsimile

Attorneys for Defendants,
ALLIED INTERSTATE LLC and
CAPITAL ONE BANK (USA) N.A.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW T. HILL,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ALLIED INTERSTATE LLC,<br><br>　　　　Defendant. | Case No: 3:13-cv-02728-JM-BGS<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY ACTION**<br><br>Hon.　Jeffrey T. Miller<br>Date:　October 14, 2014<br>Time:　10:00 a.m.<br>Courtroom: 5D<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The FCC will soon decide pending petitions that address the definition of an Automatic Telephone Dialing System ("ATDS") and the meaning of the term "capacity" under the Telephone Consumer Protection Act ("TCPA"). The FCC's determination may have a dispositive effect on Plaintiff's remaining TCPA claim in this case. There is a growing trend of courts across the country staying similar cases under the doctrine of primary jurisdiction pending the FCC's ruling on the petitions. Defendant ALLIED INTERSTATE, LLC ("Allied") meets the requirements for a stay based on primary jurisdiction because the pending TCPA issues are within the

special competence of the FCC and involve policy considerations. The Court thus should grant Allied's Motion.

## II.   ARGUMENT

### A.   <u>The FCC Has Never Ruled on the Specific Issues of the TCPA</u>.

#### 1.   Capacity of an ATDS

The FCC has never ruled on the issue of "capacity" of an Automatic Telephone Dialing System ("ATDS") under the FDCPA. Despite this, Plaintiff cites various authorities for the proposition that the FCC has already ruled that a predictive dialer is an ATDS. *See Jamison v. First Credit Servs. Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013); *Frydman v. Portfolio Recovery Associates, LLC*, 11 CV 524, 2011 WL 2560221 (N.D. Ill. June 28, 2011); *Tovar v. Midland Credit Mgmt.*, No. 10-cv-2600 MMA (MDD), 2011 WL 1431988, at *4 (S.D. Cal. April 13, 2011); *Robinson v. Midland Funding, LLC*, No. 10-cv-2261 MMA (AJB), 2011 WL 1434919, at *5 (S.D. Cal. April 13, 2011); *Pimental v. Google, Inc.*, No. 11-cv-2585 YGR, 2012 WL 1458179, at *3 (N.D. Cal. April 26, 2012); *In re the Matter of Rules & Regulations. Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559 (2008) ("2008 Declaratory Ruling"), *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, at 14092-93, ¶ 134 (2003) ("2003 TCPA Order").

Upon this premise, Plaintiff attempts to assert either (1) that the FCC's previous rulings imply that the all predictive dialers have the requisite capacity under the TCPA; or (2) the capacity of a predictive dialer is irrelevant to establishing it as an ATDS because the FCC has already ruled that a predictive dialer is an ATDS. Neither assumption (Opposition at 8:20-23 and 10:3-15) has merit.

The FCC has never stated that the issue of "capacity" can be divorced from the definition of an ATDS, and none of its previous rulings assert that a determination of capacity is not required to ascertain if a specific predictive dialer constitutes an ATDS. Such a construction would be counter to Ninth Circuit precedent. As set

forth in *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009), "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator." *See Ibey v. Taco Bell Corp*., 12-CV-0583-H WVG, 2012 WL 2401972 at *3 (S.D. Cal. June 18, 2012)(granting motion to dismiss where plaintiff neither specifies that the device has the capacity to store or produce telephone numbers nor that the system uses a random or sequential number general to text message the numbers).

In this regard, Plaintiff's argument ignores the specific issue of the definition of "capacity" raised by the TCPA petitions and whether it includes both "present" and "potential" capacity. As stated by the District of Kansas in pertinent part:

> "Plaintiff argues that the FCC has issued several orders and rulings on the general topic of whether predictive dialers meet the ATDS definition, and all have concluded that they do. But none of these orders has addressed the specific "capacity" question raised by defendant, as well as by Communication Innovators and YouMail. Thus, the FCC has not decided yet the precise, narrow question relevant here."

*Higgenbotham v. Diversified Consultants, Inc.*, 13-2624-JTM, 2014 WL 1930885 at *3 (D. Kan. May 14, 2014); *Mendoza v. UnitedHealth Grp. Inc*., 13-1553 PJH, 2014 WL 722031 at *3 (N.D. Cal. Jan. 6, 2014.) As the FCC has not yet ruled on this specific issue whether the capacity of an ATDS includes potential and present capacity, this favors granting Allied's Motion.

### 2.   Courts Are Split on Notion of Capacity

Several court have limited the interpretation capacity to "present" capacity (*See Gragg*, *supra; Hunt v. 21st Mortgage Corp.*, 2:12-CV-2697-WMA, 2013 WL 5230061 at *3 (N.D. Ala. Sept. 17, 2013), while in *Griffith v. Consumer Portfolio Serv., Inc*., 838 F. Supp. 2d 723, 727 n.1 (N.D. Ill. 2011), the Northern District of Illinois appeared to imply capacity could include being programmed "to dial numbers randomly or sequentially." Plaintiff cites *Satterfield,* 569 F.3d 946, 951

for the proposition that capacity means both present or potential, but the decision never specifies the limit of that notion. "If the regulation is unambiguous, its plain meaning controls unless such a reading would lead to absurd results." *United States v. Bucher*, 375 F.3d 929, 932 (9th Cir. 2004). As set forth in *Hunt*, to broadly construe capacity to mean "ability to be reprogrammed" would sweep in every iPhone in the country. *See* CI Petition at 17. *See also Gragg*, 2014 WL 494862 at *6. The only logical construction of "capacity" would require some limit on "hypothetical capacity," which is clarification sought in the FCC Petition.

### B. The FCC's Agency Expertise is Needed on These Specific Issues.

Plaintiff asserts that the district court is well suited to resolve the TCPA issues. (Opposition at 7). This does not mean courts have not been willing to refer such questions to the administrative agency. In granting a motion to stay on the grounds of primary jurisdiction, the First Circuit held that specific definitions of telephone facility elements were "complicated and technical," and deferred to the FCC on that issue. *See Verizon New England, Inc. v. Maine Pub. Utilities Comm'n*, 509 F.3d 1, 11 (1st Cir. 2007). Similarly, in *In Palmer Foundry, Inc. v. Delta-HA, Inc.*, 319 F. Supp. 2d 110, 114 (D. Mass. 2004), the District of Massachusetts held that whether the resin at issue was an "oxidizer" under OSHA regulations was a matter of first impression, stating in pertinent part:

> "[N]o OSHA regulation on its face provides clear guidance on this question, and plaintiff's and defendant's experts offer conflicting opinions. ***While this court has the power to make the determination, this highly technical question is better "referred" to OSHA pursuant to the doctrine of primary jurisdiction***. OHSA is the federal agency specifically charged with regulating the handling of dangerous materials in the workplace. It has the primary responsibility for defining and classifying dangerous materials. It is most sensible, therefore, that OSHA should be allowed to do what is clearly within its "ken"— determine whether the resin is or is not an "oxidizer." *Id.*

This mirrors the conflict of expert opinions in *Satterfield,* 569 F.3d at 951, as to whether the equipment at issue constituted an ATDS, reinforcing Allied's position

that the technical issue of capacity is best reserved for the FCC. Because these issues are determinations not within the conventional experience of judges and involve technical and policy considerations, each consideration weighs in favor of granting a stay or dismissal in this case.

### C. Plaintiff Put the Capacity of Allied's ATDS at Issue in this Litigation.

Plaintiff disingenuously claims that there is no basis for Allied's motion because the capacity of the type of Allied's autodialers is not an issue, and no discovery has been conducted on that point. (Opposition at 6:10-24) Plaintiff's Amended Complaint specifically alleges that "Defendants and/or their agents placed these [collection] calls to Hill's cellular telephone via an 'automatic telephone dialing system' as defined by 47 U.S.C. § 477 227 (a)(1)." (Amended Complaint, ¶15) However, it was not until Plaintiff's Expert Disclosure pursuant to F.R.C.P. 26(a)(2)(A) served on August 25, 2014 that Defendant first learned that Plaintiff intends to present expert testimony that "Allied employed an utilized equipment which has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator." (*See* Plaintiff's Expert Disclosure attached as Exhibit "A to the Declaration of J. Grace Felipe in support of Motion to Stay the Action, Document 27-2.) Shortly thereafter, Allied filed the Motion to Stay the Action on September 12, 2014.

Allied disputes these allegations on the basis of insufficient information, in part due to the current dispute over the scope of capacity. Therefore, the issue of capacity has been put at issue in this litigation, and Allied filed the Motion to Stay soon thereafter. Moreover, in clarifying "capacity", the FCC could possibly state that actionable capacity includes present and some level of theoretical capacity, but there is no liability for theoretical capacity beyond a certain point. There must be some limits on capacity. *See Gragg*, 2014 WL 494862 at *6. ("To hold otherwise would

subject almost all sophisticated computers and cell phones to TCPA liability, a result Congress surely did not intend.") Therefore, by virtue of putting the capacity of Allied's ATDS at issue, the current FCC petitions are relevant.

### D. There is a Continuing Trend of Courts to Staying TCPA Cases Under the Primary Jurisdiction Doctrine.

Courts across the country are staying TCPA cases based on the primary jurisdiction doctrine. The Southern District of California recently stayed *In Re: Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation*, Case No. 11md2295 JAH (BGS) under the doctrine of primary jurisdiction. (*See* Document 144 of Case No. 11md2295 JAH (BGS).) That Multidistrict Litigation case involved five consolidated putative class action cases alleging that the defendant violated the TCPA by calling cellular telephone numbers with an ATDS without prior express consent. The defendant moved to stay the action pending the outcome of petitions before the FCC under the doctrine of primary jurisdiction. (*See* Document 123 of Case No. 11md2295 JAH (BGS).) There, the Court found that the FCC is in the process of utilizing its recognized expertise in considering issues currently pending, thereby satisfying the prerequisites for application of the primary jurisdiction doctrine. (*See Maronyan v. Toyota Motor Sales USA, Inc.*, 658 F.3d 1038, 1048-49 (9th Cir. 2011).) The Court further found the factors weigh in favor of a stay, such that the term "capacity" as used in the TCPA is not within the conventional experience of judges but, instead involves technical or policy considerations within the FCC's particular field of expertise, and a substantial danger of inconsistent rulings exist if a stay is not implemented. *Id.* As such, the Court expressly stated that the benefit of FCC guidance necessitates a stay of this action pending the FCC's resolution of the issues.

Other courts have stayed similar cases as this one under the primary jurisdiction doctrine, noting the courts found the FCC to be the recognized expert in interpreting the TCPA. *See, e.g.*, *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459,

468 (6th Cir. 2010) (referring the dispute to the FCC to rule on whether a provider could be held liable under the TCPA for calls placed by independent contractors); *Mendoza v. UnitedHealth Group, Inc.*, 2014 U.S. Dist. LEXIS 1616, at *6 (N.D. Cal. Jan. 6, 2014) (staying action alleging that defendant utilized an ATDS to contact the plaintiff's cellular telephone); *Fried v. Sensia Salon, Inc.*, 2013 U.S. Dist. LEXIS 168645, at *17–18 (S.D. Tex. Nov. 27, 2013) (staying proceedings pending FCC ruling on whether the equipment defendants employed qualifies as an ATDS); *Glauser v. Twilio, Inc.*, 2012 U.S. Dist. LEXIS 9648, at *5 (N.D. Cal. Jan. 27, 2012) (staying action to await the FCC's determination of "who qualifies as an auto-dialer subject to the TCPA"); *United States v. Dish Network, LLC*, 2011 U.S. Dist. LEXIS 10943, at *11 (C.D. Ill. Feb. 4, 2011) (staying all TCPA-related claims pending FCC proceedings).

In each of these cases, the court granted a motion to stay based on the primary jurisdiction doctrine after concluding that the following factors had been satisfied: (1) the issue was not within the conventional experience of judges; (2) the issue involved technical or policy considerations within the agency's particular field of expertise; (3) the issue was particularly within the agency's discretion; or (4) there existed a substantial danger of inconsistent rulings. *Brown v. MCI WorldCom Network Servs., Inc.*, 227 F.3d 1166, 1172–73 (9th Cir. 2002). Each court correctly concluded that a stay based on primary jurisdiction was warranted, and the Court here should similarly grant Allied's motion to stay or dismiss.

### E. Plaintiff Ignores Two Separate Decisions That the FCC's Decision on the Relevant Petitions Should be "Relatively Soon."

Plaintiff asserts that because that there is no way to know for certain when the FCC will rule on any of the petitions, and if it does, it will be in the undetermined and possibly distant future. (Opposition at 11:6-8) The District of New York in *Passero v. Diversified Consultants, Inc.,* 2014 WL 2257185 at *3, and in *Mendoza v. UnitedHealth Grp. Inc.*, 13-1553 PJH, 2014 WL 722031 (N.D. Cal. Jan. 6, 2014)

both held that they expect a decision on the pending petitions "relatively soon." Moreover, the Glidetalk Petition (See Dkt. No. 56-5) and Professional Association for Customer Engagement Petition, CG Dkt. No. 02-278 (filed Oct. 18, 2013) (http://apps.fcc.gov/ecfs/document/view?id=7520958196) were both filed seeking an Expedited Rulemaking.

Plaintiff's concerns about delay could be ameliorated by the parties filing a status statement similar to that in *Mendoza* (2014 WL 722031 at *2)--"No later than six months from the date of this order, the parties shall file a status statement with the court, advising as to the FCC's progress on resolving these issues."

### G.     **The Retroactivity of the FCC's Ruling Should Not Be an Issue.**

Plaintiff erroneously argues that any ruling the FCC issues regarding the definition of ATDS or the meaning of the term "capacity" could only be applied prospectively. (Opposition at 13.)  Plaintiffs mistakenly rely on cases that hold when the FCC enacts new regulations, they generally have no retroactive effect. (*Id.* at 16) (citing *Jamison*, 290 F.R.D. at 102; *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *Beller v. Health & Hosp. Corp.*, 703 F.3d 388, 391 (7th Cir. 2012) *Frydman*, 2011 U.S. Dist. LEXIS 69502, at *18;)).   Because the regulation promulgated by the FCC merely interprets the substantive provisions of the Act, it does not present retroactivity concerns.  *See Gusman v. Comcast Corp*., 13CV1049-GPC DHB, 2014 WL 2115472 at *4 (S.D. Cal. May 21, 2014)(holding that FCC Petitions in that case "both petitions seek to 'clarify' the TCPA regulations at issue" and granting stay). *See also Manhattan Gen'l Equip. Co. v. Commissioner*, 297 U.S. 129, 135, 56 S.Ct. 397, 80 L.Ed. 528 (1936) (explaining that an agency ruling interpreting a statute "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand"); *AT&T Commc'ns Sys. v. Pac. Bell*, 203 F.3d 1183, 1187 (9th Cir. 2000)(same).

/ / /

Allied is not urging a stay pending FCC rulemaking. Instead, Allied requests that the Court await the FCC's imminent guidance on the definition of ATDS and the meaning of "capacity." Settled law recognizes that such decisions apply retroactively since they are merely clarifying the existing state of the law. *See, e.g.*, *Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001) (stating that a clarifying rule "can be applied to the case at hand just as a judicial determination construing a statute can be applied to the case at hand," and does not raise issues of retroactivity); *Farmers Tel. Co. v. FCC*, 184 F.3d 1241, 1250 (10th Cir. 1999) ("We agree with the FCC that the question of retroactivity does not arise in the present case because its ruling is merely interpretive.").

## III.   CONCLUSION

For the reasons set forth above, and in Allied's Motion, this Court should grant Allied's Motion and stay this case on the grounds of primary jurisdiction.

DATED: October 7, 2014              CARLSON & MESSER LLP

                                    By: /s/ J. Grace Felipe
                                        Jeffery J. Carlson
                                        J. Grace Felipe
                                        Attorney for Defendant,
                                        ALLIED INTERSTATE LLC and
                                        CAPITAL ONE BANK (USA) N.A.

# CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October 2014, a true and accurate copy of the foregoing **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY ACTION** was served via the U.S. District Court ECF system on the following.

Patric Alexander Lester
Patric Lester & Associates
5694 Mission Center Road, Suite 358
San Diego, CA  92108
Tel:  (619) 283-6078
Fax:  (314) 241-5777
Email:  pl@lesterlaw.com

                                                            /s/ J. Grace Felipe
                                                            J. Grace Felipe
                                                            CARLSON & MESSER LLP