1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| ANDREW T. HILL, | CASE NO. 13cv2728 JM(BGS) |
|---|---|

11

Plaintiff,

ORDER DENYING MOTION TO STAY ACTION WITHOUT PREJUDICE

12

vs.

13

ALLIED INTERSTATE LLC, and
CAPITAL ONE BANK (USA) N.A.,

14

Defendants.

15
16

Defendants Allied Interstate LLC ("Allied") and Capital One Bank (USA) N.A.

17 ("Cap One") move to stay this action pending the issuance of anticipated Declaratory

18 Rulings by the Federal Communications Commission ("FCC").  Plaintiff Andrew T.

19 Hill opposes the stay.  Pursuant to L.R. 7.9(d)(1), the court finds this matter appropriate

20 for decision without oral argument.  For the reasons set forth below, the court denies

21 the motion to stay without prejudice.

22

## BACKGROUND

23

The First Amended Complaint ("FAC"), filed on June 30, 2014, alleges two

24 claims for relief: (1) negligent violation of the Telephone Consumer Protection Act

25 ("TCPA"), 47 U.S.C. §227 et seq.; and (2) willful violation of the TCPA.  Plaintiff

26 seeks actual damages, statutory damages, and attorney fees and costs.

27

Plaintiff alleges that Cap One "contracted or engaged Allied for the purpose of

28 conducting a campaign of telephone collection calls to, among other numbers, Hills

cell number." (FAC ¶8).  Beginning on or about May 17, 2013, Defendants directed "a campaign of telephone collection calls" to Plaintiff's cell number.  Plaintiff alleges that the telephone calls were made via an automatic telephone dialing system ("ATDS") in violation of TCPA. (FAC ¶¶15, 19).  Plaintiff did not provide consent for Defendants to place the telephone calls to his cell number.

Plaintiff seeks an award of statutory damages in the amount of $500 per violation for the negligently placed telephone calls and $1,500 per violation for the willful and knowing violation of the TCPA.  Plaintiff also seeks an award of costs and attorney's fees.

## DISCUSSION

"Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.  The doctrine applies when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  Brown v. MCI WorldCom Network Services, Inc., 277 F.3d 1166, 1172 (9th Cir. 2002) (internal quotation marks and citations omitted).  The doctrine permits the appropriate administrative agency with an opportunity to act on issues "within the special competence of an administrative agency.  It requires the court to enable a referral to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling."  Reiter v. Cooper, 507 U.S. 258, 268 (1993).

"Although [n]o fixed formula exists for applying the doctrine of primary jurisdiction, . . . . the doctrine applies where there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."  Davel Communications, Inc. v. Qwest Corp., 460 F.3d 1075, 1086-87 (9th Cir. 2006) (internal quotation marks and citations omitted).

1    Urging the court to apply the primary jurisdiction doctrine, Defendants move to
2  stay this action pending the FCC's resolution of several Petitions for Expedited
3  Declaratory Ruling ("Petitions") concerning a purported issue in this case.  See Glide
4  Talk Petition; In re YouMail Petition; ACA International Petition (Felipe Decl. Exhs.
5  B, D, E).  The TCPA is violated when ATDS equipment is used to make telephone
6  calls to cell numbers (except telephone calls made in emergencies or with express prior
7  consent).  47 U.S.C. §227(b)(A).  The TCPA defines ATDS as equipment that has the
8  "capacity (A) to store or produce telephone numbers to be called, using a random or
9  sequential number generator; and (B) to dial such numbers."  47 U.S.C. §227(a)(1).
10  The Petitions for Declaratory Ruling seek a ruling on whether ATDS equipment, for
11  purposes of liability under the TCPA, applies only "to equipment that can, at the time
12  of the call, be used to store or generate sequential or randomized telephone numbers."
13  (Felipe Decl., Exh. B).  In other words, Defendants argue that where the ATDS
14  equipment at issue has only a potential, but not actual, capacity to store or produce
15  telephone numbers, there is no liability under the TCPA.  Conversely, Defendants
16  contend that equipment that has the present capacity to store or produce telephone
17  numbers, using a random or sequential number generator, does violate the TCPA.

18    Defendants assert that "[i]f the FCC concludes dialing equipment must have the
19  current capacity to generate and dial random or sequential numbers that would defeat
20  Plaintiff's claims."  (Motion at p.1:22-26).  On March 25, 2014, FCC Commissioner
21  Michael O'Reilly noted a marked increase in the number of TCPA lawsuits and
22  indicated that a ruling on the Petitions should be accomplished as soon as possible.  He
23  further noted "[t]hrough this process, the FCC has the opportunity to answer important
24  questions and provide much needed guidance on a variety of TCPA issues . . .
25  including . . . whether devices such as smart phones could be considered" ATDS.
26  (Felipe Decl., Exh. F).

27    At the outset the court notes that the issue raised by the parties is a technical one,
28  requiring the analysis of an evidentiary record not submitted by either party. The

applicable statutory definition provides:

> (1) The term "automatic telephone dialing system" means equipment which has the capacity--
>
>> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>>
>> (B) to dial such numbers.

47 U.S.C. §227(1). Under this definition, the term "capacity" is subject to interpretation (ie. whether the equipment must have a present capacity to store and produce telephone numbers or only a potential capacity). As cited by the parties, the court notes that district courts throughout the country have taken different positions on whether a stay is appropriate to permit the FCC to exercise its regulatory competence and clarify the scope of the term "capacity."

Before turning to the "capacity" argument raised by Defendants, the court notes that the FCC has issued several rules and comments concerning the TCPA. In 2002, the FCC recognized that autodialing technology had advanced and responded to comments concerning so-called predictive dialers and whether these devices fell within the scope of the TCPA. Predictive dialers are devices that do not randomly or sequentially dial telephone lists. Rather, predictive dialers rely on telephone numbers from lists provided by the equipment operator. "These lists are anything but 'random and sequential.'" Griffith v. Consumer Portfolio Serv., Inc., 838 F.Supp.2d 723, 725-26 (N.D. Ill. 2011). At least two separate rulings by the FCC confirmed that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialer." Id. (quoting In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 566 (Jan. 4, 2008)). The FCC concluded that,

> [T]o exclude from [the restrictions on automated and prerecorded calls] equipment that use [sic] predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result. Calls to emergency numbers, health care facilities, and wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists and software packages.

> We believe the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented.

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14092-93 (July 3, 2003).

Defendants identify that "capacity" is now at issue because Plaintiff's expert will opine that "Allied employed and utilized equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." (Felipe Decl. Exh. A). Defendants, without citation to any evidentiary support, contend that the term "capacity," limited to "a current capacity to generate and dial random or sequential numbers," would result in the defeat of Plaintiff's claims. In the event the term "capacity" means only a potential capacity, the reach of the TCPA would likely extend to millions of iPhone and other smart phone users as applications could be developed to facilitate such capacity. See Hunt v. 21st Mort. Corp., 2013 WL 5230061 *4 (N.D. Ala. September 17, 2013). Such a broad construction, Defendants conclude, would potentially subject millions of smart phone users to liability under the TCPA. Narrowing the scope of the term "capacity" to one reflecting the *present* capacity would, Defendants argue, limit the reach of the TCPA.

Here, in the absence of an evidentiary record, the court cannot determine whether interpretation of the term "capacity" means either present, current, potential, or contemporaneous capacity. Accordingly, the court is unable to determine whether any potential construction of the term "capacity" will have any impact on the ATDS equipment used in this case. The Ninth Circuit has noted that, "[w]hen evaluating the issue of whether equipment is ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009). It is clear that Congress intended to curtail the actual making of automated or prerecorded calls by equipment designed for such purposes. Among other things, Congress made the following

findings with respect to the TCPA:

> 10.   Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

> 12.   Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

TCPA, P.L. 102-243 §§2(10) and (12).  From these findings, the court concludes that Congress broadly targeted the making of automated or prerecorded telephone calls, absent certain circumstances not relevant here.   Thus, in general, telephone calls completed using automated equipment violates the TCPA.

The court notes that Defendants, who have the burden to demonstrate the appropriateness of a stay, have failed to carry their burden, see Hilton v. Braunskill, 481 U.S. 770, 776 (1987), or to show that the issue raised is a particularly complex one requiring the expertise of the FCC.  See Brown, 277 F.3d at 1172.[1]  Finally, the court again highlights that the parties fail to submit any evidence identifying the functionality of the equipment at issue.  This deficiency alone warrants the denial of the motion to stay.   Defendants presumably know the characteristics and capabilities of the equipment used to effectuate the telephone calls to Plaintiff.  Plaintiff, on the other hand, has had about one year to conduct discovery and has failed to identify the characteristics and capabilities of the equipment used to effectuate the telephone calls.[2] Furthermore, depending on the factual scenarios developed by the parties, the

---

[1] The court is also concerned about undue delay.  Both parties have the right to the timely resolution of this action.  The record reveals that the FCC indicated on September 10, 2013, that the issue of "capacity" would be resolved "relatively soon." Mendoza v. UnitedHealth Group, Inc., 2014 WL 722031 *2 (N.D. Cal. Jan. 6, 2014). As over one year has elapsed since the issue was under consideration by the FCC, there is nothing in the record to indicate that a ruling is imminent.

[2] The court notes that Plaintiff would not likely survive summary judgment based upon Plaintiff's expert merely parroting the statutory language to describe the equipment at issue.

distinction between "current" and "potential" capacity may not be rigidly resolved and neatly pigeonholed. This is especially true where technology is ever-changing and may be developed and implemented to circumvent an ordinary understanding of terms like "current," "present," or "potential" capacity. In such circumstances, the court is guided by the Congressional mandate to curtail and protect telephone customers from such nuisances and invasions of privacy arising from the use of automated telephone dialing. The stated purpose of Congress in enacting the TCPA was to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers." S. Rep. No. 102–178, at 1 (1991), U.S. Code Cong. & Admin. News 1991, at 1968.   While technology may change, the purpose of the TCPA remains the same.

In sum, the court denies the motion to stay without prejudice.

**IT IS SO ORDERED.**

DATED:  December 4, 2014

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:          All parties